619 A.2d 779

**Robert A. LYNN and Dolores M. Camacho, Appellants,**

**v.**

**PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 17, 1992.

Filed Jan. 28, 1993.

---

480

Lee Albert, Philadelphia, for appellants.

Christine M. Brenner, Philadelphia, for appellee.

Before McEWEN, DEL SOLE and HUDOCK, JJ.

HUDOCK, Judge:

Robert Lynn and Dolores Camacho (Appellants) appeal from the order of the trial court granting summary judgment in favor of Prudential Property and Casualty Insurance Company (Appellee) regarding all claims Appellants had against Appellee. We affirm.

The parties stipulated to the facts pertinent to the case: On December 5, 1989, Appellant Robert Lynn and Appellee entered into a contract of insurance which provided, *inter alia*, first party benefits under the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL).[1] The contract of insurance was effective from that date until June 5, 1990. Appellant Robert Lynn paid a premium of $553. The premium was calculated to provide first party coverage under the MVFRL at the time the parties entered into the contract.

On May 2, 1990, Appellants were injured in a motor vehicle accident in Philadelphia. At the time of the accident, Appellant Robert Lynn was the owner and operator of the car in which Appellant Dolores Camacho was riding as a passenger. As a result of the accident, Appellant Robert Lynn and Appellant Dolores Camacho incurred certain medical ex-

1. *See generally,* Chapter 17 of the Motor Vehicle Code; 75 Pa.C.S. (Purdon Supp.1992).

penses. Appellants made proper applications for first party benefits to Appellee pursuant to the above contract of insurance. Appellee paid or challenged these medical bills pursuant to 75 Pa.C.S. § 1797(a) & (b) (Purdon Supp.1992).[2]

On August 22, 1990, Appellants filed a lawsuit for payment of those medical bills which were either not paid or challenged by Appellee. Subsequently, compulsory arbitration was held which resulted in an award for Appellants. Appellee appealed this award to the trial court. The parties entered into a stipulation of fact and thereafter filed cross-motions for summary judgment. Following oral argument and clarification of the order, the trial court entered an order granting Appellee's motion for summary judgment as to all claims brought by Appellants. This appeal followed.

On appeal, Appellants claim that the trial court erred in granting Appellee's motion for summary judgment. Our standard utilized when reviewing such claims is well-settled:

Rule 1035 of the Pennsylvania Rules of Civil Procedure provides that summary judgment is to be entered only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Pa.R.C.P. 1035(b). The moving party has the burden of demonstrating that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. In deciding whether the moving party has met this burden, the court must examine the record in the light most favorable to the non-moving party. *Giannini v. Carden,* 286 Pa.Super. 450, 429 A.2d 24 (1981); *Amabile v. Auto Kleen Car Wash,* 249 Pa.Super. 240, 376 A.2d 247 (1977); *Schacter v. Albert,* 212 Pa.Super. 58, 239 A.2d 841 (1968). The court's responsibility is to determine whether a genuine issue of material fact exists; the court may not resolve such an issue. Moreover, the court should not enter summary judgment unless

2. As shall be discussed *infra,* Section 1797 of the MVFRL was substantially amended by Act of February 7, 1990, P.L. 11. No. 6, § 18, effective April 15, 1990.

the case is free from doubt. *Tom Morello Construction Company, Inc. v. Bridgeport Federal Savings & Loan Association,* 280 Pa.Super. 329, 421 A.2d 747 (1980); *Amabile v. Auto Kleen Car Wash, supra; McFadden v. American Oil Co.,* 215 Pa.Super. 44, 257 A.2d 283 (1969).

*Weiss v. Keystone Mack Sales, Inc.,* 310 Pa.Super. 425, 430, 456 A.2d 1009, 1011 (1983). With these standards in mind, we shall review the following two claims of alleged trial court error in granting Appellee's summary judgment:

> 1. Whether 75 [Pa.C.S.] [§] 1797(a)(b), effective April 15, 1990 shall not be applied retroactively to a contract in effect prior to the April 15, 1990 [MVFRL] Amendments?
>
> 2. Whether 75 [Pa.C.S.] [§] 1797(a)(b) violates the Contract Clauses of the Consitutions [sic] of the United States and Commonwealth of Pennsylvania, where the act impairs a contractual right entered into prior to the enactment of the statute.

Appellants' Brief at p. 3.

█ The trial court found no merit in Appellants' first claim since the regulations implementing Section 1797 clearly state that the new amendments were applicable to medical services rendered after April 15, 1990. Because the motor vehicle accident in which Appellants were injured occurred on May 2, 1990, approximately seventeen days after the amendments went into effect, and medical services were rendered thereafter, the trial court found that Section 1797 was not applied retroactively. We agree.

In reaching its determination, the trial court cited the following regulation:

> [Section 1797] applies to payments by property and casualty insurers for medical treatment or services rendered on or after April 15, 1990, for the treatment or care of persons covered by automobile insurance, *regardless of when the accident or incident resulting in the need for medical care occurred or when the claim was filed.*

31 Pa.Code Ch. 68, § 1(a) (emphasis added). In concluding that Section 1797 was applied prospectively, the trial court

stated, "[T]hus, the critical date which triggers application of § 1797 is the date when the medical services were rendered, on or after April 15, 1990, even if the accident occurred, *or the pertinent policy was issued, prior to April 15, 1990.*" Trial Court Opinion at p. 5 (emphasis added). That part of the Pennsylvania Code emphasized above *does not* discuss the effective date of the amendments in regard to when the pertinent policy was issued. This brings us to a more fundamental issue stated in Appellants' second issue enumerated above.

The Contract Clauses of the United States and Pennsylvania Constitutions protect contracts freely arrived at by the parties from subsequent legislative impairment or abridgement. *First National Bank of Pennsylvania v. Flanagan*, 515 Pa. 263, 528 A.2d 134 (1987); *Beaver County Building and Loan Association v. Winowich*, 323 Pa. 483, 187 A. 481 (1936); *Ministers and Missionaries Benefit Board v. Goldsworthy*, 253 Pa.Super. 321, 385 A.2d 358 (1978).[3] The trial court found, citing both *Pennsylvania Medical Society v. Foster*, 137 Pa.Cmwlth. 192, 585 A.2d 595 (1991), and *Keystone Bituminous Coal Association v. Nicholas DeBenedictis*, 480 U.S. 470, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987), for the proposition that the Contract Clauses do not prevent the state from exercising police powers for protection of the public which is paramount to any rights under contracts between individuals, that the amendments to the MVFRL, including Section 1797, were "designed to reduce the cost of providing private passenger automobile insurance in Pennsylvania and provides mechanisms to pass those cost savings from insurance companies to insurance consumers." Trial Court Opinion at pp. 7–8 (citing Pennsylvania Insurance Department Proposed Regulations, May 18, 1991). The trial court further

---

**3.** Article 1, § 10 of the United States Constitution reads in pertinent part:

> no state shall ... pass any Bill of Attainder, *ex post facto* Law, or law impairing the Obligation of Contracts ...

Article 1, § 17 of the Pennsylvania Constitution reads in pertinent part:

> No *ex post facto* Law, nor any Law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed.

found that the changes to Section 1797 in no way impaired Appellee's basic obligation under the policy to provide Appellants with first-party benefits of $10,000. While we find such a conclusion to be overly generalized, for the reasons stated below, we find that the trial court properly granted summary judgment.[4]

A later law cannot abridge a party's rights under a prior contract; only substantive laws that are in effect when parties enter into the contract are implicitly incorporated into it. *Second Federal Savings and Loan Association v. Brennan*, 409 Pa.Super. 581, 598 A.2d 997 (1991). However, the Contract Clauses of the state and federal constitutions do not preclude the legislature from passing laws which impose new procedures on the enforcement of substantive rights. *First National Bank of Pennsylvania v. Flanagan, supra.* Thus, we must determine whether the amendments to Section 1797 infringe upon the substantive rights of Appellant Robert Lynn under his contract of insurance.

At the time Appellant Robert Lynn entered into a contract of insurance with Appellee, Section 1797 read as follows:

> A person or institution providing treatment, accommodations, products or services to an injured person for any injury covered by medical or catastrophic loss benefits shall not make a charge for the treatment, accommodations, products, or services in excess of the amount the person or institution customarily charges for like treatment, accommo-

---

**4.** Initially, Appellee argues that Appellants have waived consideration of this constitutional claim on appeal because they were raised for the first time in Appellants' 1925(b) statement of matters complained of on appeal. Upon review of the record, we find that the constitutional claim was raised in Appellants' cross-motion for summary judgment. Moreover, the trial court addressed the merit of this claim and we shall, therefore, do the same. *But cf., Rutledge v. Com., Department of Transportation*, 97 Pa.Cmwlth. 98, 508 A.2d 1306 (1986) (waiver found where appellant sought a remand so that the trial court could consider a constitutional issue raised by counsel in a 1925(b) statement filed one month after the trial court wrote its opinion).

dations, products and services in cases involving no insurance.

Section 1797 now reads:

**(a) General rule.**—A person or institution providing treatment, accommodations, products, or services to an injured person for any injury covered by liability or uninsured and underinsured benefits or first party medical benefits, including extraordinary medical benefits, for a motor vehicle described in Subchapter B (relating to motor vehicle liability insurance first party benefits) shall not require, request or accept payment for the treatment, accommodations, products or services in excess of 110% of the prevailing charge at the 75th percentile; 110% of the applicable fee schedule, the recommended fee or the inflation index charge; or 110% of the diagnostic-related groups (DRG) payment; whichever pertains to the specialty service involved, determined to be applicable in this Commonwealth under the Medicare program for comparable services at the time the services were rendered, or the provider's usual and customary charge, whichever is less.

... Providers subject to this section may not bill the insured directly but must bill the insurer for a determination of the amount payable. *The provider shall not bill or otherwise attempt to collect from the insured the difference between the provider's full charge and the amount paid by the insurer.*

**(b) Peer review plan for challenges to reasonableness and necessity of treatment.—**

**(1) Peer review plan.**—Insurers shall contract jointly or separately with any peer review organization established for the purpose of evaluating treatment, health care services, products or accommodations provided to any injured person. Such evaluation shall be for the purpose of confirming that such treatment, products, services or accommodations conform to the professional standards of performance and are medically necessary. An insurer's challenge must be made to a PRO within 90 days of the insurer's receipt of the

provider's bill for treatment or services or may be made at any time for continuing treatment or services.

\* \* \* \* \* \*

**(7) Determination in favor of insurer.**—If it is determined by a PRO or court that a provider has provided unnecessary medical treatment or rehabilitative services or merchandise or that future provision of such treatment, services or merchandise will be unnecessary, or both, the provider may not collect payment for the medically unnecessary treatment, services or merchandise. If the provider has collected such payment, it must return the amount paid plus interest at 12% per year within 30 days. *In no case does the failure of the provider to return the payment obligate the insured to assume responsibility for payment for the treatment, services or merchandise.* (Emphasis supplied).

\* \* \* \* \* \*

Appellants claim that these amendments allow

the insurance company to alter the manner of payment of the insured's claims for medical expenses by altering the rules for customary charges for treatment which are covered by the insurance company and instituting a peer review plan for challenging the reasonableness and the necessity of treatment. These amendments change the first party benefit coverage of the insurance contract having a detrimental effect on the insured.

Appellants' Brief at pp. 15–16. Appellants do not sufficiently state how these amendments work to their detriment. As indicated by the language of both sections emphasized above, the insured is held harmless under sub-section (a) for the difference between the amount charged by the provider and the amount paid by the insurer and, under sub-section (b), in no way does the provider's failure to return a payment for unnecessary medical treatment or services obligate the insured to assume responsibility for payment for these services.

Thus, these cost-containment provisions of Section 1797 do not impair the contract with the insured; the only effect of the amendments is to change the way in which a provider is compensated for the services rendered.

In regard to Section 1797(b), Appellants argue that "[i]f the Peer Review determines that the treatment is unreasonable and based upon such conclusion, [Appellants] are denied further payment of their bills then the medical providers will deny further treatments." Appellants' Brief at p. 11. While Appellant Lynn speculates that his contract would be impaired if, due to lasting injuries from the 1990 accident, he desires treatment and is denied same, there is no evidence in the record that this scenario has arisen.[5] We cannot find the obligations of a contract to be impaired based on some future event which may or may not occur.

There being no genuine issue of material fact as to whether Appellant Lynn's contract of insurance is presently impaired

5. We find little indication in the present record that Appellant Camacho has received or requested continuing treatment for injuries incurred from the automobile accident at issue. Appellee concedes that it has referred treatment Appellant Robert Lynn received in 1991 to a PRO. Exhibit D to Appellants' motion for summary judgment consists of a letter to Appellee from a PRO recommending that Appellee refuse to reimburse for physiotherapist treatments which were administered without a licensed physical therapist. This recommendation, if acted upon, would still not impair Appellee's obligation to Appellant Lynn because he will not be responsible for payment for treatment already received. Moreover, under the former No–Fault Act, the MVFRL prior to the cost-containment provisions, and the MVFRL as it exists today, an insurer can compel an insured to submit to a physical examination. In this way, an insurer has always been able to challenge the legitimacy and necessity of continued treatment of injuries related to automobile accidents. Rather than using the courts to challenge the treatment or expense, the insurer can now refer the treatment to a PRO. The courts remain an option for claims for treatment or services which the insurer refuses to reimburse but does not submit to peer review. See 75 Pa.C.S. § 1797(b)(4) (Purdon Supp.1992). Section 1797(b) has been interpreted to allow for an appeal to a court of law if an insured or provider disagrees with the determination of a PRO and reconsideration is denied. See Elliott v. State Farm Mutual Automobile Insurance Co., 786 F.Supp. 487 (E.D.Pa.1992); Danton v. State Farm Mutual Insurance Co., 769 F.Supp. 174 (E.D.Pa.1991). Thus, the PRO process does not impair any obligation; it merely changes the procedure for challenging medical treatment and expenses.

by the 1990 amendments to Section 1797, we find that summary judgment was proper.

Order affirmed.