Jerry **KONIDARIS** and Theodara G. **Konidaris**, individually and on behalf of all others similarly situated, Appellants

v.

**PORTNOFF LAW ASSOCIATES, LTD.**

Commonwealth Court of Pennsylvania.

Argued May 4, 2005.

Decided Sept. 16, 2005.

Reargument Denied Nov. 2, 2005.

---

Bernard S. Rubb, Sewickley, for appellants.

Benjamin G. Lipman, Wynnewood, for appellee.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge SIMPSON.

We are asked to determine the constitutionality of a retroactive amendment to the statute known as the Municipal Claims and Tax Liens Act (Act).[1] The retroactive amendment permitted recovery of reasonable attorney collection fees in addition to delinquent property tax. The current issue arises in the context of a suit initiated before enactment of the retroactive amendment. The trial court's grant of partial summary judgment holding retroactive application of the amendment constitutional is presently before us on appeal by permission.

## I. Statutory Background

Before 1996, Section 3 of the Act, 53 P.S. § 7106(a), permitted a municipality to recover a very limited attorney collection fee in addition to the principal amount due.[2] Under this provision, a municipality bore the burden of attorney collection fees in excess of a limited amount.

Effective January 1, 1996, the Act was amended to permit a municipality to recover a reasonable attorney fee in addition to the principal amount due (1996 Amendment).[3] This amendment shifted to a de-

---

1. Act of May 16, 1923, P.L. 207, *as amended,* 53 P.S. §§ 7101–7505.

2. *See* Section 20 of the Act of May 16, 1923, P.L. 207.

3. *See* Sections 1–2 of the Act of February 7,

linquent taxpayer the burden of a reasonable attorney collection fee. The language of the amended statute, however, addressed "[a]ll municipal claims."

The amended Act was construed by the Pennsylvania Supreme Court in the 2003 case of *Pentlong Corp. v. GLS Capital, Inc.*, 573 Pa. 34, 820 A.2d 1240 (2003). The Court discussed the historical distinction between municipal claims (for unpaid special taxes) and tax claims (for unpaid general taxes, such as property taxes). It concluded that the ability to add a reasonable attorney collection fee was limited to municipal claims and did not extend to tax claims. Under this decision, a municipality bore the burden of all attorney collection fees for tax claims, but a delinquent taxpayer bore the burden of a reasonable attorney collection fee for municipal claims.

In an obvious attempt to remedy the situation, five months later the General Assembly again amended the Act to expressly include tax claims as among those to which a reasonable attorney collection fee may be added. Act 20 of 2003 (2003 Amendment).[4] The 2003 Amendment was made retroactive to January 1, 1996,[5] which was the effective date of the 1996 Amendment. With this amendment, a delinquent taxpayer bore the burden of reasonable attorney collection fees for both municipal and tax claims.

## II. Procedural Background

About a week after the Supreme Court's decision in *Pentlong Corp.* and before the enactment of the 2003 Amendment, the current action commenced in the Court of Common Pleas of Allegheny County (trial court). The action is styled as a class action brought on behalf of all owners of real estate in Pennsylvania "whose real property has been the subject of claims for delinquent municipal property taxes or delinquent school property taxes which delinquent tax claims were placed with Portnoff for collection." Complaint, ¶ 26; Reproduced Record (R.R.) at 11a. The action names as defendant Portnoff Law Associates, Ltd. (Portnoff), a law firm that represents numerous municipalities and school districts in the collection of delinquent tax claims and municipal claims.

The suit mirrors the claims made in *Pentlong Corp.*, generally challenging the addition by Portnoff of attorney collection fees to delinquent tax claims. As to the named plaintiffs, the suit references delinquent tax claims for the tax years 1998 through 2001, for which claims a sheriff's sale of property was imminently scheduled. The gravaman of the complaint is that under the Act no attorney collection fee could be added to delinquent tax claims. In the alternative, attorney collection fees were excessive and unreasonable. Complaint, ¶¶ 42, 44, 46; R.R. at 15a. The plaintiffs (Delinquent Taxpayers) seek declaratory judgment, recovery of attorney collection fees, recovery of punitive damages, and an injunction against further collection of improper attorney collection fees.

The trial court stayed pending sheriff's sales for the entire class. An answer and new matter was filed raising affirmative defenses, including failure to join any municipality or taxing jurisdiction. No responsive pleading was filed.

Without further discovery or hearings,[6] the parties filed cross-motions for sum-

---

1996, P.L. 1.

4. Act of August 14, 2003, P.L. 83 (2003 Amendment).

5. Section 10 of the 2003 Amendment.

6. The docket entries fail to reveal that the mandatory class certification hearing was held or that a ruling was made on class certification. R.R. at 1a–4a. *See* Pa. R.C.P. No. 1715(a) (court may not enter summary judg-

mary judgment on whether the 2003 Amendment could be constitutionally applied to this pending action.

The trial court addressed the tenet of Pennsylvania constitutional law that an accrued cause of action is a vested right which may not be extinguished by retroactive legislation. It concluded that the 2003 Amendment did not unconstitutionally deprive plaintiffs of an accrued cause of action. Embracing an impairment of contracts analysis, the trial court determined the plaintiffs sought to protect a mere personal economic expectation which did not rise to the level of vested right qualifying for constitutional protection. Thus, the trial court denied plaintiffs' motion for summary judgment and granted Portnoff's motion for partial summary judgment. Subsequently, it certified its order for appeal by permission, and the plaintiffs were granted permission to appeal by this Court.

### III. Discussion

Before this Court, the plaintiffs (Delinquent Taxpayers) raise several assignments of error. First, they challenge the legal test used by the trial court, asserting that a vested rights analysis prevails over a rational basis analysis. Second, they dispute the trial court's conclusion that their existing lawsuit did not constitute a vested right.

Our scope of review of an order granting summary judgment is plenary, and we will

ment against class before ruling on class certification); Pa. R.C.P. No. 1715(a) cmt. (summary judgment entered before class certified binds only named plaintiffs).

7. Plaintiffs are joined by amicus curiae Association of Community Organizations for Reform Now (ACORN).

8. Article I, Section 11, titled "Courts to be open; suits against the Commonwealth," states (with emphasis added):

reverse the order of a trial court only where the court committed an error of law or clearly abused its discretion. *Minn. Fire and Cas. Co. v. Greenfield.*, 579 Pa. 333, 855 A.2d 854 (2004).

■ Where, as here, the statute contains the specific legislative direction that it is to be retroactive, the proper starting point is the presumption that the legislature does not intend to violate the Constitution, and the corollary that a party asserting the unconstitutionality of a legislative act bears a heavy burden of proof. *Bible v. Dep't of Labor and Indus.*, 548 Pa. 247, 696 A.2d 1149 (1997). A statute will only be declared unconstitutional if it clearly, palpably and plainly violates the Constitution. *Ieropoli v. AC&S Corp.*, 577 Pa. 138, 842 A.2d 919 (2004).

### A. Test for Constitutionality

Delinquent Taxpayers[7] rely on the Remedies Clause of the Pennsylvania Constitution, Article I, Section 11,[8] and cases applying the clause to retroactive legislation, most notably *Ieropoli*. They contend the proper test is whether the retroactive act extinguishes an accrued cause of action, which would violate the protection of the Remedies Clause. Also, they assign error to the trial court's reliance on cases interpreting due process protections and applying a rational basis test.

All courts shall be open; and *every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law*, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

Portnoff[9] concedes that the legal analysis set forth in *Ieropoli* must be met. In addition, the retroactive act must satisfy a due process analysis. Portnoff contends the trial court correctly conducted both analyses.

*Ieropoli* is a controlling authority. The case involved a statute which limited asbestos-related liabilities of corporations that arose out of mergers or consolidations. The statute expressly applied to pending lawsuits. A machinist with a pending asbestosis suit challenged the constitutionality of the statute, which had the effect of shielding one of the defendants from liability. On appeal from the trial court's dismissal of the defendant, the Supreme Court reversed. It held that under the Remedies Clause, a cause of action that has accrued is a vested right which may not be eliminated by subsequent legislation. The Supreme Court explained the purpose of this constitutional tenet by reference to several cases, including *Lewis v. Pennsylvania R.R. Co.*, 220 Pa. 317, 324, 69 A. 821, 823 (1908):

'There is a vested right in an accrued cause of action.... A law can be repealed by the lawgiver; but the rights which have been acquired under it, while it was in force, do not thereby cease. It would be an absolute injustice to abolish with the law all the effects it had produced. This is a principle of general jurisprudence; but a right to be within its protection must be a vested right.'

As part of its analysis in *Ieropoli*, the Court undertook an evaluation of the machinist's pending suit and the effect which the statute would have on it. Following the Supreme Court's process in *Ieropoli*, we examine the claims made by the Delinquent Taxpayers here, analyzing what cause of action is raised, whether it has accrued, and, if so, how it is affected by the 2003 Amendment.[10] As neither the trial court nor the parties undertake this examination, we depart from the arguments.

### B. Causes of Action

Our Supreme Court in *Ieropoli* discussed the meaning of the phrase "cause of

---

**9.** Portnoff is joined by amicus curiae GLS Capital, Inc. and amici curiae West Jefferson Hills School District, School District of Pittsburgh, Moon Area School District, Sto Rox School District, Carlynton School District, Montour School District, and Keystone Oaks School District.

**10.** The dissenting opinion follows a different approach. The dissenting opinion posits an unstated cause of action accruing for the Delinquent Taxpayers when tax liens including excessive collection fees were filed. The majority declines to follow this approach for at least two reasons.

First, the dissenting opinion declares a cause of action that was not stated by Delinquent Taxpayers in their complaint. Moreover, Delinquent Taxpayers never raised this issue as a defense or set-off in the underlying tax lien litigation. There is no known authority for analyzing not only stated causes of action but also claims that could have been

stated but were not. Adopting such an approach causes uncertainty and invites litigation not only in a vested rights analysis under the Remedies Clause but also in a statute of limitations analysis.

Second, an excessive collection fee by itself is not a cause of action. Rather, it is the basis for a defense or set-off in the underlying tax lien proceedings, or it is an element of a separate cause of action for either malicious abuse of process or wrongful use of civil proceedings. *See Morphy v. Shipley*, 351 Pa. 425, 41 A.2d 671 (1945); 42 Pa.C.S. § 8351–55. Here, Delinquent Taxpayers did not raise the defense or set-off in the underlying tax lien litigation. Also, neither separate cause of action arising from an excessive collection fee accrues until the underlying proceedings terminate in favor of the plaintiff. *See* Restatement (Second) of Torts § 674 (1977); 42 Pa. C.S. § 8351(a)(2). Where the cause of action has not accrued, retroactive legislation may be applied without offending the Remedies Clause.

action." Acknowledging that the phrase does not have a single definition and means different things depending on context, the Court decided in that case the phrase related to remedy. "It is the vehicle by which a person secures redress from another person for the consequences of an event that is a legal injury." *Ieropoli,* 577 Pa. at 155, 842 A.2d at 929–30.

■ A cause of action arises under Pennsylvania law when one can first maintain an action to a successful conclusion. *In re Schorr,* 299 B.R. 97 (Bankr.W.D.Pa. 2003). Stated differently, an action does not accrue and the statute of limitations does not begin to run until there is an existing right to sue forthwith. *New York & Pennsylvania Co. v. New York Cent. R.R. Co.,* 300 Pa. 242, 150 A. 480 (1930).

### 1. Declaratory Judgment

In Count I of their Complaint, the Delinquent Taxpayers request declaratory judgment that all attorney's fees and expenses collected by Portnoff in connection with tax claims were collected in contravention of Pennsylvania law.

This is a request for a statutory remedy under the Declaratory Judgments Act.[11] Under 42 Pa.C.S. § 7533, any person whose rights or other legal relations are affected by a statute, such as the Act as amended by the 1996 Amendment, may have determined any question of construction or validity and obtain a declaration of rights or legal relations thereunder.

■ In order to sustain an action under the Declaratory Judgments Act, a plaintiff must demonstrate an "actual controversy" indicating imminent and inevitable litigation, and a direct, substantial and present interest. *Wagner v. Apollo Gas Co.,* 399 Pa.Super. 323, 582 A.2d 364 (1990). Be-

cause an action for declaratory judgment cannot be sustained until these elements can be shown to exist, it follows that a cause of action for declaratory judgment does not arise until such "actual controversy" exists. *Id.* The four year "catch-all" statute of limitations begins to run at that time. *Id.; see* 42 Pa.C.S. § 5525(8).

Under this analysis, Delinquent Taxpayers had an accrued cause of action for declaratory judgment at least at the time they filed suit. The requested declaration will be unavailable to them if the 2003 Amendment is applied retroactively to this claim.

■ However, the request for declaratory relief contains a fatal jurisdictional flaw. Pursuant to 42 Pa.C.S. § 7540(a), all persons shall be made parties who have or claim any interest which would be affected by the declaration. This provision is mandatory. *County of Allegheny v. Commonwealth,* 71 Pa.Cmwlth. 32, 453 A.2d 1085 (1983). Also, in tax matters, the appropriate taxing authorities must be served. 42 Pa.C.S. § 7540(b). Failure to join or serve parties as required by the statute is a jurisdictional defect. *Pennsylvania Ins. Guar. Ass'n v. Schreffler,* 360 Pa.Super. 319, 520 A.2d 477 (1987); *Melnick v. Melnick,* 147 Pa.Super. 564, 25 A.2d 111 (1942). Such a jurisdictional defect may be raised by a court on its own motion at any time, even on appeal. *Pennsylvania Ins. Guar. Ass'n.* Where the defect exists, dismissal is appropriate. *Id.*

■ Here, the Delinquent Taxpayers neither joined nor served any taxing authority, even the McKeesport Area School District, which is specifically identified as the taxing authority with an interest in the taxes owed by the named plaintiffs and in the proceeds of scheduled sheriff's sale.

---

**11.** 42 Pa.C.S. §§ 7531–7541.

Complaint, ¶¶ 10, 12–20; R.R. at 1a–4a, 9a–10a. No explanation is offered.

The failure to join at least the McKeesport Area School District improperly deprives that interested public body of a voice in these proceedings, including the consideration of sheriff's sale stays. Further, the failure to join the interested public body imprudently deprives this Court of the benefit of its argument. This jurisdictional defect requires dismissal of Count I seeking declaratory relief. *Pennsylvania Ins. Guar. Ass'n.*[12]

### 2. Unjust Enrichment

In Count II, Delinquent Taxpayers make a claim for unjust enrichment. They aver the attorney's fees collected by Portnoff are benefits conferred, appreciated, and inequitably retained. Delinquent Taxpayers seek an injunction, a constructive trust, an accounting, and damages.

■■■■■ The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under circumstances that it would be inequitable for defendant to retain the benefit without payment of value. *Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc.*, 832 A.2d 501 (Pa.Super.2003), *appeal denied*, 577 Pa. 724, 847 A.2d 1288 (2004). The most significant element of the doctrine is whether the enrichment of the defendant is unjust; the doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff. *Id.* Where unjust enrichment is found, the law implies a quasi-contract which requires the defendant to pay the

plaintiff the value of the benefit conferred. *Id.*

■■■■ Delinquent Taxpayers state a cause of action for unjust enrichment. This cause of action accrues, however, when the defendant receives and retains benefits. *See id.*; *Tonkin v. Palmer*, 26 Pa. D. & C.3d 763 (C.P. Pike County 1983).

Application of the 2003 Amendment to this cause of action will significantly alter the inquiry into whether any enrichment is unjust. Indeed, application of the 2003 Amendment to this claim will remove any argument that enrichment was unjust, thereby effectively extinguishing this cause of action. Thus, the 2003 Amendment affects this cause of action in a way Article I, Section 11 prohibits. *Ieropoli*, 577 Pa. at 155–56, 842 A.2d at 929–30. The respected trial court fell into error when it concluded otherwise.

In summary, a cause of action for unjust enrichment accrued as to those attorney's fees actually recovered by Portnoff before the passage of the 2003 Amendment on August 14, 2003. The 2003 Amendment may not be applied to extinguish this cause of action, which will focus on whether any enrichment of Portnoff was unjust. As to attorney's fees not actually received by Portnoff before August 14, 2003, the cause of action for unjust enrichment was not complete, and the 2003 Amendment may be applied to them.

### 3. Fraud

■■■ In Count III, Delinquent Taxpayers seek redress for an alleged fraudulent scheme to assess, bill and collect unauthorized attorney's fees and expenses. They

12. We note that *Ieropoli* and other cases on which Delinquent Taxpayers rely dealt with lawsuits properly instituted to which retroactive legislation was applied. We do not today address the novel question of whether an ac-

crued cause of action which is not perfected by a properly instituted suit nevertheless constitutes a vested right protected by the Remedies Clause.

aver that Portnoff falsely represented it was authorized to assess and collect attorney's fees and the fees were a legitimate obligation of the Delinquent Taxpayers. They also aver Portnoff was aware of the falsity of the representations after this Court's decision in *Pentlong Corp. v. GLS Capital, Inc.*, 780 A.2d 734 (Pa.Cmwlth. 2001). However, Delinquent Taxpayers do not aver reliance on Portnoff's representations. Complaint, ¶¶ 49–53; R.R. at 16a–17a.

All the essential elements of fraud must be pled in order to establish a cause of action in fraud. *Rivello v. New Jersey Auto. Full Ins. Underwriting Ass'n*, 432 Pa.Super. 336, 638 A.2d 253 (1994). A cause of action for fraud includes a showing that the plaintiff acted in reliance on the defendant's misrepresentation. *Klemow v. Time Inc.*, 466 Pa. 189, 352 A.2d 12 (1976).

Here, Delinquent Taxpayers did not plead reliance. Because a necessary element of the cause of action is not present, no cause of action for fraud accrued before the 2003 Amendment was enacted. Thus, the 2003 Amendment may be applied to this cause of action without offending the Remedies Clause.

## IV. Summary

Based on the foregoing discussion, we reject Portnoff's argument that Delinquent Taxpayers had neither vested rights nor any accrued cause of action. We do not follow the numerous cases relied upon by Portnoff which do not address the Remedies Clause and do not employ a vested rights analysis most recently explained in *Ieropoli.*

We resolve the current appeal by application of the Remedies Clause. Therefore, we need not discuss at length additional arguments relating to a due process analysis of the 2003 Amendment, beyond ac-knowledging an obvious and rational basis for the General Assembly's attempt to cure a deficiency in the 1996 Amendment.

For the reasons stated, we remand to the trial court for dismissal of Count I, declaratory judgment, for jurisdictional defects. Also, we affirm in part and reverse in part as to Count II, unjust enrichment. Act 20 of 2003 may be constitutionally applied to that part of Count II relating to attorney's fees actually received by Portnoff after enactment of Act 20 of 2003. The grant of partial summary judgment is affirmed as to these claims. However, applying Act 20 of 2003 to claims in Count II for relief as to attorney's fees actually received by Portnoff before August 14, 2003, unconstitutionally extinguishes an accrued cause of action, and the grant of partial summary judgment as to those claims is reversed. Finally, we affirm the trial court as to Count III, fraud. We express no opinion as to the merit of the remaining claims.

## ORDER

AND NOW, this 16th day of September, 2005, the order of the Court of Common Pleas of Allegheny County, dated September 17, 2004, is hereby **AFFIRMED** in part and **REVERSED** in part.

The matter is remanded for further proceedings consistent with the foregoing opinion. Jurisdiction is relinquished.

DISSENTING OPINION BY Judge PELLEGRINI.

Imagine your credit card company has consistently charged you unlawful fees—tripling your bill. Upon realizing this illegality, you sue the credit card company to recover those fees. A month later, a law is enacted that says the credit card company cannot only charge those fees in the fu-

ture, but *can recover those fees it illegally imposed in the past.* If that legislation is constitutional, what is the result? The credit card company receives a windfall, and you are left without a remedy to be reimbursed for illegally charged fees that tripled your monthly credit card payment.

That windfall is essentially what was allowed to occur with regard to municipal liens with the passage of Act 20. Under Act 20, municipalities, their appointed agents, or the companies that purchase tax liens from municipalities are allowed to collect legal fees incurred during the collection of delinquent taxes dating back to 1996 under the Municipal Claims and Tax Liens Act (Tax Lien Law). In effect, some companies that purchase the liens or law firms that are engaged in the business of collecting the liens make their money on the amount of the fees that can be imposed. The net result in this case is that the named plaintiffs were required to pay triple the amount of the underlying lien because of the imposition of attorney's fees—even though no such authority existed at the time that those fees were imposed. To foreclose that result, the electors of the Commonwealth adopted Article 1, § 11 of the Pennsylvania Constitution to preclude the legislature from retroactively sanctioning actionable conduct by providing that no cause of action that had accrued could be vitiated by act of the legislature. While the majority found that attorneys' fees collected before the passage of Act 20 could not be retroactively legalized back to 1996, I believe that Act 20 is unconstitutional under Article 1, Section 11 of the Pennsylvania Constitution with respect to all claims filed prior to the effective date of its passage. Accordingly, for the foregoing reasons, I respectfully dissent.

Jerry and Theodara Konidaris, husband and wife, (collectively, Konidaris) are the record owners of certain real property situated in the City of McKeesport, Allegheny County, Pennsylvania (the Property). Konidaris failed to pay property taxes levied by the McKeesport School District (District) for calendar years 1998, 1999, 2000, and 2001, which totaled $2,147.59 (Tax Claim). The Tax Claim was secured by liens against the Property in favor of the District (Tax Liens).

Portnoff Law Associates, Ltd. (Portnoff) is a law firm engaged by more than 40 municipalities and school districts to collect delinquent taxes and initiates Sheriff's sale proceedings as part of its method to collect such taxes. The District hired Portnoff to collect the Konidaris Tax Claim.

In addition to the face amount of the Tax Claim, Portnoff added various fees to the amount, including attorneys' fees, increasing the total amount of the Tax Claim to $5,927.52, nearly tripling the original amount of the taxes pursuant to Section 3 of the Tax Lien Law, 53 P.S. § 7106. In addition, Portnoff initiated Sheriff's sale proceedings against the Property on behalf of the School District for the 1998 and 1999 tax years, and the sale was scheduled for April 7, 2003, to satisfy the claimed amounts, including attorneys' fees and expenses. Those proceedings, however, were stayed by the Court of Common Pleas of Allegheny County (trial court) pending the outcome of this litigation.

On March 19, 2003, the Supreme Court of Pennsylvania rendered its decision in *Pentlong Corp. v. GLS Capital, Inc.*, 573 Pa. 34, 820 A.2d 1240 (2003). Our Supreme Court held in that case, inter alia, that it was illegal for a municipality or school district to collect its own attorneys' fees incurred while collecting delinquent taxes pursuant to Section 3 of the Tax Lien Law. On March 28, 2003, Konidaris filed a class action complaint on behalf of themselves and others similarly situated

seeking declaratory relief, injunctive relief, and punitive damages against Portnoff, claiming that under our Supreme Court's recent decision in Pentlong, Portnoff's attempt to collect attorneys' fees was illegal. The three counts listed in the complaint were (1) declaratory judgment; (2) unjust enrichment; and (3) fraud.

On August 14, 2003, apparently in response to the *Pentlong* decision, the General Assembly passed Act 20 of 2003, which amended the Tax Lien Law. Under Section 2 of Act 20 (which amends Section 3 of the Tax Lien Law), municipalities and school districts are now authorized to collect reasonable attorneys' fees incurred during the collection of delinquent taxes under the Tax Lien Law. Under Section 10 of Act 20, the General Assembly pronounced that the amendments to Section 3 of the Tax Lien Law apply "retroactively to January 1, 1996."

Based on Act 20, Portnoff took the position in the Konidaris class action that its collection of attorneys' fees had been retroactively legalized, and that the imposition of the fees associated with the Konidaris Tax Claim (which were invalidated by *Pentlong*) were validated by Act 20. Konidaris then filed for summary judgment based on their assertion that Act 20 was unconstitutional retroactive legislation in violation of Article 1, Section 11 of the Pennsylvania Constitution. Portnoff also filed its own motion for partial summary judgment.

The trial court denied summary judgment to Konidaris and granted summary judgment to Portnoff, reasoning that Act 20 was constitutional and did not impermissibly extinguish any vested rights of Konidaris or other similarly situated plaintiffs. The trial court reasoned that *Pentlong* did not create a cause of action for Konidaris (i.e., an action to recover illegally charged attorneys' fees). The trial

court also reasoned that the mere personal expectation that Konidaris and others similarly situated had that they would never have to pay attorneys' fees when their tax delinquencies and real estate liens were resolved was not the type of vested right that the Pennsylvania Constitution and the United States Constitution protected. Finally, the trial court reasoned that Act 20's retroactive application satisfied due process because it was merely a remedial, curative, or validating amendment, the retroactivity of which was not barred by the Pennsylvania Constitution. Following that ruling, Konidaris filed a Petition for Permission to Appeal the interlocutory order denying summary judgment which was granted by the trial court.

On appeal to this Court, the majority dismisses the declaratory judgment count under Section 7540(b) of the Judicial Code, 42 Pa.C.S. § 7540(b)—which provides that in tax matters, the appropriate taxing authorities must be served with process—reasoning that although Konidaris and others similarly situated had an accrued cause of action for declaratory relief at least at the time they filed suit, they failed to join the taxing authority (i.e., McKeesport Area School District), rendering this count dismissible. As to the unjust enrichment count, the majority holds that Act 20 could not be applied to the attorneys' fees "actually recovered" by Portnoff before the passage of Act 20 (on August 14, 2003) because a cause of action accrued for unjust enrichment as to those fees; however, as to the fees not actually "received" by Portnoff before August 14, 2003, the cause of action for unjust enrichment was incomplete, thereby allowing Portnoff to invoke Act 20 and recover. Finally, the majority holds that because Konidaris failed to plead "reliance" (a necessary element of fraud), no cause of action for fraud commenced before Act 20. Because I would

hold that Act 20 violates Article 1, Section 11 of the Pennsylvania Constitution by retroactively changing not only the Konidaris law suit, but the terms of each of the Konidaris liens that were established well before Act 20 was enacted, I respectfully dissent.

First and foremost, it is helpful to understand at the outset the nature of municipal tax liens. Municipal tax liens are statutory liens and, as such, are governed strictly by the statute under which the liens were created. *Spring Garden Township v. Logan*, 149 Pa.Super. 580, 27 A.2d 419 (1942). In simple terms, the taxing authorities cannot impose upon taxpayers that which has not been authorized specifically by statute. See 14 EUGENE McQUILLAN, THE LAW OF MUNICIPAL CORPORATIONS § 38.161, at 470–71 (3d ed. 1998). Once the taxes become past due, the taxing authority is empowered to perfect its lien (within 3 years from the date the taxes are due) and to charge interest at a rate not to exceed 10% from the date the lien is filed (i.e., perfected). 53 P.S. § 7143; *Chartiers Valley School District v. Virginia Mansions Apartments, Inc.*, 340 Pa.Super. 285, 489 A.2d 1381 (1985). Just like any other lien, the amount owed once the lien is filed is fixed and cannot be changed or amended after it becomes operative; the only changes that are authorized by statute are those that, for example, change minor errors in the filing. 53 P.S. § 7144. Local taxing authorities can also charge certain costs and fees associated with the collection of delinquent taxes, 53 P.S. § 7106, but they could not, as of January 17, 2003 (when Portnoff attempted to collect the delinquent amounts in this case), charge *any* attorneys' fees under the Tax Lien Law for recovery of delinquent taxes. *See formerly* 53 P.S. § 7106; *Pentlong*. It appears that any fee incurred in attempting to collect on the lien merges into the underlying lien. 53 P.S. § 7106(a). If the property is sold at judicial sale to collect the underlying lien and it is insufficient to pay the amount claimed, the property owner at the time the fee is owed is still personally obligated to pay any deficiency. *See* 53 P.S. § 7251; 53 P.S. § 7101.

For lack of a better term then, each of the Konidaris tax liens from 1998–2001 were "set in stone" in terms of their amount as of the date the taxing authority filed the claim for delinquent taxes. They included, as the statute dictated at the time the liens were filed, the amount of the underlying tax plus interest, if any, from the date each lien was filed, and costs, if any, associated with the collection, excluding attorneys' fees. As of January 17, 2003, when Portnoff tripled the amount of the underlying lien by adding attorneys' fees into the mix without the apparent authority to do so under the Tax Lien Law, Konidaris' obligations under the tax lien for each tax year was substantially changed, as everyone would agree, and accordingly, Konidaris sued to establish their rights about two months later.

With that backdrop in mind, the fundamental issue as presented to us by the parties becomes clear: Can legislation retroactively change the economic obligations of parties to an existing cause of action by retroactively sanctioning actionable conduct that was being redressed in an existing cause of action? In my view, the retroactive application of Act 20 strips Konidaris and similarly situated plaintiffs of their existing "remedy" to be free from paying attorneys' fees where no such authority existed to impose those fees under the Tax Lien Law at the time their cause of action arose. That remedy was duly invoked under our Supreme Court's decision in *Pentlong* and cannot, by any act of the General Assembly, be disturbed without running afoul of the Pennsylvania Constitution.

The Pennsylvania Constitution (and the constitutions of at least 39 other states) contains a provision requiring, *inter alia*, that a person receive a remedy by "due course of law" for an injury done to him or her. *See* PA. CONST. art. 1, § 11. Specifically, Article 1, § 11 of the Pennsylvania Constitution provides as follows:

> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

PA. CONST. art. 1, § 11.

In *Ieropoli v. AC&S Corporation*, 577 Pa. 138, 842 A.2d 919 (2004), our Supreme Court explained that this provision of Article 1, Section 11 directs the judiciary to administer justice by due course of law and prohibits the legislature from intermeddling with those judicial functions. *Ieropoli*, 577 Pa. at 149, 842 A.2d at 925–26 (quoting *Menges v. Dentler*, 33 Pa. 495 (1859)). The Court went on to explain that the "guarantee of a 'remedy by due course of law' in Article 1, Section 11, means that a case cannot be altered, in its 'substance,' by subsequent law[.]" *Id.*

A case is altered in its "substance" once legislation affects a "cause of action" that has "accrued." *Lewis v. Pennsylvania Railroad Co.*, 220 Pa. 317, 69 A. 821 (1908) (stating that "the law of the case at that time when it became complete is an inherent element in it; and, if changed or annulled, the law is annulled, justice denied, and the due course of law is violated"). A "cause of action" is "the vehicle by which a person secures redress from another person for the consequences of an event that is a legal injury." *Ieropoli*, 577 Pa. at 155, 842 A.2d at 929–30. A cause of action does not necessarily "accrue" the day the lawsuit is filed; instead, it accrues once a potential plaintiff has an existing right to sue. *See, e.g., New York & Pennsylvania Co. v. New York Cent. R.R. Co.*, 300 Pa. 242, 150 A. 480 (1930). An "accrued" cause of action, in turn, creates a vested right, the interference with which by the legislature is a violation of Article 1, Section 11. *Gibson v. Commonwealth*, 490 Pa. 156, 415 A.2d 80 (1980) (quoting *Lewis*, 220 Pa. at 319, 69 A. at 823) (stating that " '[t]here is a vested right in an accrued cause of action.... A law can be repealed by the law giver; but the rights which have been acquired under it, while it was in force, do not thereby cease. It would be an absolute injustice to abolish with the law all the effects it had produced. This is a principle of general jurisprudence; but a right to be within its protection must be a vested right.' ").

Our cases clearly demonstrate that the General Assembly cannot pass legislation that retroactively affects a cause of action that has already accrued. For instance, in *Jenkins v. Hospital of Medical College of Pennsylvania*, 535 Pa. 252, 634 A.2d 1099 (1993), the plaintiff brought an action against her medical providers for negligence and for wrongful birth, a cause of action that was recognized at common law. Four years later while the case was ongoing, the General Assembly passed a statute (42 Pa.C.S. § 8305) that precluded any cause of action for wrongful birth for any case pending or on appeal as of the statute's effective date, which included the plaintiff's case. Our Supreme Court held that Section 8305 could not operate to dismiss plaintiffs' wrongful birth claims because she had a vested right in the cause of action that commenced before Section 8305 was passed and given retroactive effect. *See also Rebel v. Standard Sanitary Mfg. Co.*, 340 Pa. 313, 318–19, 16 A.2d 534,

537 (1940) (plaintiff's claim for injury sustained at work, alleging violation of statute giving injured workers a cause of action for negligence against employers, could not be affected by subsequent repeal of that statute; "in *Kay v. Pennsylvania Railroad Co.*, 65 Pa. 269, 277, 3 Am. Rep. 628, it was said: 'The law of the case at the time when it became complete is an inherent element in it, and if changed or annulled the right is annulled, justice is denied, and the due course of law violated.'").

In *Gibson*, plaintiffs filed five separate actions in trespass between July and October 1978 against the Department of Environmental Resources and the Commonwealth, alleging that they negligently supervised the dam that caused a flood during a heavy rainstorm in 1977. At that time, sovereign immunity did not exist. Thereafter, the General Assembly passed Act 152, which created statutory sovereign immunity for the first time in Pennsylvania. Based on Act 152, the commonwealth parties argued that plaintiffs' claims were barred by sovereign immunity because the language of Act 152 applied retroactively and applied to plaintiffs' cause of action. Our Supreme Court held that Act 152 could not apply because no sovereign immunity existed at the time the plaintiffs' cause of action accrued, which was nearly a year before the General Assembly passed Act 152.

Finally, our Superior Court in *Stroback v. Camaioni*, 449 Pa.Super. 395, 674 A.2d 257 (1996), held that a motorist injured in March 1990 seeking to recover medical expenses that were precluded from recovery by the General Assembly three months after the accident *could not be foreclosed* by doing so by that subsequent legislation. The court explained as follows:

> Under the version of Section 1722 in effect on March 15, 1990, the day that appellee's cause of action arose, appellee was entitled to recover all medical expenses, in excess of the required $10,000 in medical coverages, which she had, or would in the future, incur as a result of the accident, irrespective of whether those medical bills had been paid by a person, plan, or company other than appellee. *See, e.g.: Palmosina v. Laidlaw Transit Company, Inc.*, 445 Pa.Super. 121, 664 A.2d 1038 (1995).... Thus, appellee was entitled, as of the day her cause of action arose, to seek recovery of all of her subsequently incurred medical bills which exceeded $10,000. This was a substantive right which could not properly be revoked by subsequent legislative action. *See, e.g., Jenkins v. Hospital of The Medical College of Pennsylvania*, 401 Pa.Super. 604, 616–17, 585 A.2d 1091, 1096–97 (1991), aff'd., 535 Pa. 252, 634 A.2d 1099 (1993); *Bell v. Koppers Co., Inc.*, [481 Pa.] supra [454] at 458–59, 392 A.2d [1380] at 1382; *Byard F. Brogan, Inc. v. Workmen's Compensation Appeal Board*, 161 Pa.Cmwlth. 453, 462–63, 637 A.2d 689, 694 (1994). *Cf. Lynn v. Prudential Property and Casualty Insurance Co.*, 422 Pa.Super. 479, 619 A.2d 779 (1993) (statute providing for peer review organization review was *procedural* rather than *substantive* and, thus, could be applied to medical bills payable pursuant to contracts entered into prior to effective date of statute).
>
> However, as a result of the Act 6 amendments effective July 1, 1990, the right to recover such excess medical expenses was extinguished where those expenses were paid by any entity identified in the amended Section 1722. We concur in the conclusion of the trial court that the amended statute could be applied only to bills arising from *accidents occurring after* July 1, 1990, and was inapplicable in the instant case

where appellee had a *substantive* right as of March 15, 1990, to pursue a claim for excess medical expenses which could not later be extinguished by the enactment of the legislation known as Act 6. It is well-settled that the Legislature may not extinguish a right of action which has already accrued to a claimant. *Id.* at 261.

The chronology of events in all these cases can be summarized as follows: (1) a legitimate cause of action ensued; (2) before the cause of action ended, the General Assembly enacted legislation that either retroactively eliminated the cause of action altogether or affected the law in force at the time the action arose; and (3) the retroactive legislation was either invalidated as running afoul of Article 1, Section 11 or held not to apply to the commenced cause of action. Importantly, the underlying theme in all of these cases is that there was something systemically and inherently wrong with a state legislature interfering with a cause of action that had commenced. As those cases illustrate, a cause of action is a snapshot of the facts and law that exist at the time the controversy began until the time it finally ceases. It must be viewed in a legal "bubble" and decided based on the law and the facts as they existed at the time the lawsuit commenced without interference by subsequent acts of the General Assembly. Should the legislature interfere with accrued causes of action, then the legislature, not the judiciary, becomes the arbiter of private disputes.

Applying the general principles of *Ieropoli* and its progeny here should lead to the result that the retroactive application of Act 20 runs afoul of Article 1, Section 11. As a general proposition, once Konidaris filed the lawsuit to recover improperly charged fees and to prevent the attempted collection of those fees in the future, the legislature was effectively prohibited from intermeddling with the "substance" of that lawsuit. *Ieropoli.* In other words, on January 17, 2003, when Portnoff imposed attorneys' fees that were not authorized under the Tax Lien Law at that time, Konidaris had an "accrued cause of action" against Portnoff to recover those fees and to prevent the attempted collection of those fees in the future, whether or not the Konidaris lawsuit was actually filed on that date or two months later. *Id; see also New York & Pennsylvania Co.*

The chronology of this case, furthermore, mirrors the chronology of the cases that have struck down retroactive legislation in violation of Article 1, Section 11. The Tax Lien Law as it existed when the Tax Claims against the Konidaris Property began had no provision granting the authority to municipalities, school districts, or their agents to recover attorneys' fees in connection with the collection of delinquent taxes. This is not disputed by the parties. Roughly ten days later, Konidaris filed a class-action complaint against Portnoff to preclude it from attempting to recover attorneys' fees in connection with the collection of the delinquent taxes under our Supreme Court's decision in *Pentlong* and to recover improperly collected attorneys' fees by Portnoff. Four months later, while the Konidaris lawsuit was pending, Act 20 was enacted and signed into law by the Governor, which purported to give municipalities and school districts (and their agents) the authority to collect attorneys' fees retroactive to tax claims beginning in 1996, which included the Konidaris Tax Claim. It is absolutely clear by the chronology of this case that Act 20 immediately affected the Konidaris cause of action that had already ensued in violation of Article 1, Section 11.

While I agree with the majority that a cause of action accrued for fees "actually recovered" by Portnoff before the passage of Act 20, I disagree with the majority's implication that Konidaris cannot prevent Portnoff from recovering any fees not "actually received" before the passage of Act 20. The majority reaches this conclusion by essentially defining "cause of action" as "counts in the complaint" for purposes of Article 1, Section 11. The majority's count-by-count approach at defining the Konidaris lawsuit ignores the notion that the "cause of action" was the wrongful attempt to collect unauthorized attorneys' fees for delinquent taxes, not the counts of the complaint which were merely the vehicle by which to enforce legal rights and to pursue legal remedies. For purposes of Article 1, Section 11, however, it is enough to say that the moment a cognizable legal injury is befallen a potential plaintiff, whatever that injury may be, a cause of action has "accrued" and cannot be subsequently eliminated or altered by retroactive act of the legislature. As illustrated above, the cause of action in this case was the right to recover fees and prevent the future attempt to collect fees on underlying tax claims that no one had the authority to impose in the first place as of the day the liens arose, whether or not those fees were "actually received" by Portnoff.

Finally, I disagree with the majority that the declaratory judgment action should have been dismissed for lack of service on the District (or any of the other taxing authorities) because it is not an indispensable party. Konidaris and other similarly situated plaintiffs challenged the propriety of the underlying lien which has to do with the collection of unlawfully imposed fees (ancillary to the actual tax) by a *third party*, rendering service on the taxing authority immaterial. It would be a different matter had the Konidaris lawsuit alleged that the underlying tax was improper, miscalculated, or that the amount of the fee levied was improper. It appears from the complaint that once the District decided to either sell the liens to a third party or authorized an outside agent such as Portnoff to collect the liens, like any buyer of bad debt or collection agency, it received the illegal fees directly and became the real party in interest. Consequently, because the District is not the real party in interest, service on the District was neither necessary nor a proper basis to dismiss the declaratory judgment portion of Konidaris complaint. In any event, failure to serve the District and dismiss it from the case because it was an indispensable party was not a basis upon which summary judgment was sought and upon which the trial court granted summary judgment in favor of Portnoff.

In light of the foregoing, I would (1) hold that Act 20 is unconstitutional retroactive legislation insofar as it applies to causes of action for recovery of attorneys' fees that have accrued before the date of enactment; (2) hold that Act 20 is constitutional insofar as it is applied prospectively to the collection of tax liens arising after the date of its enactment; and (3) enter summary judgment in favor of Konidaris and, if the action is certified as a class action, other similarly situated plaintiffs.

President Judge COLINS and Judge FRIEDMAN join in this dissenting opinion.