**Ken BAKER,**

v.

**UPPER SOUTHAMPTON TOWNSHIP ZONING HEARING BOARD.**

**APPEAL OF UPPER SOUTHAMPTON TOWNSHIP.**

**Ken Baker, Appellant,**

v.

**Upper Southampton Township Zoning Hearing Board.**

Commonwealth Court of Pennsylvania.

Argued Dec. 3, 2002.

Decided July 16, 2003.

Reargument Denied Sept. 8, 2003.

Bradford J. Lare, Langhorne, for appellant, Upper Southampton Township.

Robert J. Sugarman, Philadelphia, for appellant, K. Baker.

Douglas C. Maloney, Langhorne, for appellee.

BEFORE: FRIEDMAN, Judge, COHN, Judge, JIULIANTE, Senior Judge.

OPINION BY Judge COHN.

Kenneth Baker (Baker) and Upper Southampton Township (Township) have filed consolidated appeals from the order of the Court of Common Pleas of Bucks County, which affirmed the decision of the Upper Southampton Township Zoning Hearing Board (Board) determining that the Upper Southampton Township Zoning Ordinance (Ordinance) was invalid because off-premises advertising signs were excluded *de jure* and because there was no legitimate health, safety, moral or general welfare concern that justified a total prohibition of such signs.

The relevant facts of the case are as follows. Clear Channel Outdoor (Clear Channel) leased a portion of four separate properties bordering the Pennsylvania Turnpike for the purpose of constructing and maintaining off-premises outdoor advertising signs, *i.e.*, billboards, on each property including three signs on the largest property. Specifically, the properties were identified as follows in the decision of the Board:

(A) 1000 Industrial Boulevard—James E. Hasson—Warehouse Southampton, PA 18966 Co. Tax Parcel 48–15–55–1 2.836 acres

(B) 851 County Line Road—J.D.M. Material Co.—Construction Company Southampton, PA 18966 Co. Tax Parcel 48–11–1 18.1550 acres

(C) 131 Second Street Pike—Midway Associates—Fitness Center Southampton, PA 18966 Co. Tax Parcel 48–15–54–3 3.2461 acres

(D) 950 Jaymor Road—Storage Equities—Public Storage Facility Southampton, PA 18966 Co. Tax Parcel 48–11–9 7.0000 acres

(Decision of Board at 1.) Clear Channel proposed to build three signs on property (B) and one sign on the remaining three properties for a total of six signs. Each of the signs was to be "14' × 48' single pole, center mount, back-to-back (672 square feet per face) perpendicular to the Turnpike and would be illuminated from dusk until midnight." (Decision of Board, Finding of Fact (FOF) 5.)

On August 17, 2000, Clear Channel filed an application with the Board challenging the validity of Section 712 of the Ordinance. Section 712.2.B of the Ordinance provides in pertinent part:

2. *Signs in Residential Districts.*

\* \* \*

B. Off-premises signs. Off-premises signs are not permitted except as follows. Signs permitted within this section may also be on-premises signs.

(1) Signs necessary for the direction, regulation, and control of traffic, street-name signs, legal notices, warnings at railroad crossings, and

other official signs which are similarly authorized or erected by a duly constituted governmental body.

(2) Temporary signs advertising political parties or candidates for election may be erected or displayed and maintained . . . .

(3) Temporary, non-illuminated signs directing persons to temporary exhibits, shows, or events located in the Township may be erected . . . .

(4) Non-illuminated signs used for directing patrons, members, or audience to service clubs, churches, or other non-profit organizations . . . .

*Id.* These same requirements also apply in commercial and industrial districts within the Township. (*See* Section 712.3.B and 712.4.B of the Ordinance.) No other off-premises signs are permitted by the Ordinance.

The Board scheduled a hearing on the application for September 27, 2000 and it was duly advertised according to law. At this hearing, Baker, who owns property bordering the Pennsylvania Turnpike just west of one of the properties leased by Clear Channel, petitioned for party status, which the Board granted. Several more hearings followed on January 31, 2001, March 14, 2001, April 11, 2001, and May 30, 2001. The Board issued its decision on July 25, 2001. It determined that Clear Channel satisfied its burden of proving that the Ordinance totally prohibited the use of off-premises outdoor advertising signs. The Board also concluded that, with the exception of property (B), the Township and Baker failed to prove that the *de jure* exclusion promoted the health, safety, morals, or general welfare. Baker appealed this decision to the trial court. Clear Channel did not file a cross appeal as to property (B).

The trial court reviewed the record created by the Board without taking additional evidence. Keeping in mind that its standard of review was whether the Board committed an error of law or abuse of discretion, the trial court affirmed the decision of the Board. This appeal followed.[1]

■ On appeal, Baker first argues[2] that the Board failed to "implement" preservation of the natural, scenic, historic and esthetic values of the environment in violation of Article I, Section 27 of the Pennsylvania Constitution of 1968.[3] However, as Clear Channel points out in its brief, Baker is raising this issue for the first time on appeal. Our thorough review of the record indicates that Baker did not present any evidence before the Board regarding the impact of billboards on the natural, scenic, historic, and esthetic values of the

---

1. In a case where the trial court took no additional evidence, our scope of review is limited to determining whether the zoning hearing board committed an error of law or manifestly abused its discretion. *C & M Developers, Inc. v. Bedminster Twp. Zoning Hearing Board*, 573 Pa. 2, 14–15, 820 A.2d 143, 151 (2002). The Board's findings of fact must be supported by "substantial evidence," which has been defined as such relevant evidence as reasonable minds might accept as adequate to support a conclusion. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 555, 462 A.2d 637, 640 (1983).

2. We will refer to the two appellants collectively as Baker since both raise the same arguments on appeal.

3. Section 27 of Article I provides:

Natural Resources and the public estate

The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

environment. Therefore, because Baker did not raise this issue or present evidence in the prior proceedings, it is waived.

■ Next, Baker argues that the Board erred in refusing to hold that the doctrine of equitable estoppel precludes Clear Channel from challenging the validity of the Ordinance as exclusionary of off-premises advertising when it had a contract with the Township to build twenty-two off-premises advertising signs. We disagree.

■ In order to establish equitable estoppel, the party asserting the claim must show that the other party (1) intentionally or negligently misrepresented a material fact; (2) knew or had reason to know the other party would rely justifiably on the misrepresentation; and (3) induced the other party to act to its detriment because of its reliance on the misrepresentation. *Cicchiello v. Bloomsburg Zoning Hearing Board*, 151 Pa.Cmwlth. 506, 617 A.2d 835 (1992). Equitable estoppel may be applied to zoning cases. *Id.*

In the case *sub judice*, Clear Channel entered into a contract with the Township in 1990 to build bus shelters with advertising signs located throughout the Township. At the time the contract was executed, the Township did not require Clear Channel to apply for permits to construct the bus shelters. Thereafter, the Township did not amend the Ordinance or take any other affirmative steps that would demonstrate that it had relied on the contract to its detriment. Therefore, we agree with the trial court that the elements for equitable estoppel are not established because:

In the instant case, [Baker] has not shown by clear, precise and unequivocal evidence that [Clear Channel] made a misrepresentation in connection with the bus shelter contract. Further, nothing in the record suggests that [Clear Channel] misrepresented any fact in connec-

tion with the agreement. It has not been shown that, by obtaining the right to install the bus shelters, [Clear Channel] made assertions that are inconsistent with its position that the Ordinance acts as a *de jure* exclusion.

[Baker] has also failed to show detrimental reliance on the part of the Township as a result of the bus shelter contract. Pursuant to the agreement, the Township permitted [Clear Channel] to construct and install the bus shelters without applying for or receiving a permit. The Township, however, did not amend its Ordinance or otherwise change its position with respect to signage as a result of its contract with [Clear Channel].

Moreover, it has not been established that the Township's inaction with regard to the Ordinance is attributable to its participation in the bus shelter contract with [Clear Channel]. Many outdoor advertising companies serve the Pennsylvania Turnpike. [Clear Channel] is but one of many parties who could have challenged the Ordinance.

(Trial Court Opinion at 3.) Consequently, Baker's argument fails.

■ Next, Baker argues that the Board abused its discretion or erred as a matter of law by concluding that the Ordinance excluded off-premises advertising because some off-premises signs are allowed and exist in the Township. A zoning ordinance is presumptively constitutional. *Overstreet v. Zoning Hearing Board of Schuylkill Township*, 152 Pa. Cmwlth. 90, 618 A.2d 1108 (1992). Before a reviewing tribunal may declare a zoning ordinance unconstitutional, the challenging party must clearly establish that the provisions of the ordinance are arbitrary and unreasonable. *Adams Outdoor Advertising, Ltd. v. Hanover Township Zoning Hearing Board*, 159 Pa.Cmwlth. 372, 633

A.2d 240 (1993). A legislative enactment can be declared void only when it violates the fundamental law clearly, palpably, plainly and in such a manner as to leave no doubt or hesitation in the mind of the court. *Id.* An ordinance will be found unreasonable and not substantially related to a police power purpose if it is shown to be unduly restrictive or exclusionary. *C & M Developers v. Bedminster Township Zoning Hearing Board,* 573 Pa. 2, 14–15, 820 A.2d 143, 151 (2002). When reviewing an ordinance to determine its validity, courts must generally employ a "substantive due process inquiry, involving a balancing of landowners' rights against the public interest sought to be protected by an exercise of the police power." *Id.* (quoting *Hopewell Township Board of Supervisors v. Golla,* 499 Pa. 246, 255, 452 A.2d 1337, 1342 (1982)).

Section 712 of the Ordinance contains regulations for off-premises signs. In Section 712.1.D(2), the Ordinance defines an off-premises sign as "a sign which directs attention to an activity not conducted on the same premises." An advertising sign is defined as "[a]n off-premises sign which advertises or otherwise directs attention to a commodity, business, industry, home occupation or other similar activity which is sold, offered or conducted elsewhere than on the lot upon which such sign is located." Section 712.1.D(3). As we noted previously, with certain exceptions, off-premises signs are generally prohibited by the Ordinance in any district. As the trial court properly concluded, "Taken as a whole, provisions of Section 712 of the Ordinance only permit off-premises signs in the form of street signs, signs for churches and service clubs, political signs or temporary signs for special events. Consequently, off-premises advertising signs are completely excluded." (Trial Court Opinion at 4–5.) Our examination of the Ordinance

leads us to the same conclusion as the trial court.

■ Baker asserts that there is no *de jure* exclusion of off-premises advertising signs because off-premises advertising signs exist *de facto* within the Township. However, even if any signs exist in violation of the Ordinance, a *de jure* exclusion exists where the **ordinance on its face** totally excludes a proposed use. *See Centre Lime and Stone Company v. Spring Township Board of Supervisors,* 787 A.2d 1105 (Pa.Cmwlth.2001). Thus, that such signs actually exist within the Township is irrelevant to the legal issue of whether the Ordinance is *de jure* exclusionary. Moreover, discriminatory enforcement of the Ordinance is not argued here.

As additional support for his contention that the Ordinance is not *de jure* exclusionary, Baker asserts that the trial court misconstrued the "community" that benefits from the exclusion. He states that off-premises advertising signs, as proposed by Clear Channel, are not for the benefit of the residents of the Township. Rather, he contends, the drivers on the Turnpike are the relevant "community." Consequently, Baker argues that the trial court should have examined the Turnpike from the Willow Grove exit to the Delaware River Bridge to determine whether off-premises advertising signs are excluded.

We agree with the trial court's assessment that:

This argument is flawed because the entire marketing area along the Turnpike is not within the confines of Upper Southampton Township. The marketing area transcends into other townships. As a consequence, the signs legitimately located in other townships cannot be taken into consideration when determining whether off-premises signs are permitted in Upper Southampton Township.

(Trial Court Opinion at 6.) Accordingly, we conclude that the trial court did not err in finding that the Ordinance is *de jure* exclusionary.

Finally, Baker argues, in the alternative, that the Board abused its discretion or erred as a matter of law by failing to find that the Township could exclude off-premises advertising signs because they are harmful to the public health, safety, and welfare. We disagree.

■■■ When a challenger has satisfied its burden of proving that an ordinance is *de jure* exclusionary, the burden then shifts to the municipality to establish that the exclusion is for the public's health, safety, morals, and general welfare. *Adams Outdoor.* The constitutionality of a zoning ordinance that totally excludes a legitimate use must be highly scrutinized and, thus, such ordinance must bear a *more* substantial relationship to a stated public purpose than a regulation that merely confines a use to a certain zoning district. *Exton Quarries, Inc. v. Zoning Board of Adjustment,* 425 Pa. 43, 228 A.2d 169 (1967).

In support of his contention, Baker presented the testimony of Thomas J. Comitta, a land planner. Mr. Comitta was permitted to testify, but not as an expert. He indicated that the placement of the signs along this portion of the Turnpike created visual complexity, such that drivers would be distracted and it would create a safety hazard. The properties are located along a horizontal curve and Mr. Comitta stated that a curved road requires more attention while driving than a straight one. Additionally, proposed signs located near where the Turnpike runs under the Second Street Pike Bridge would create a "portal effect" and, thus, generate another safety hazard for properties B and C. Baker presented no other evidence to support the notion that the exclusion was necessary for the public's health, welfare, safety, and morals.

In opposition, Clear Channel presented the testimony of John Caruolo, who was qualified as an expert in traffic engineering. Mr. Caruolo testified that the horizontal curve of the Turnpike, where the proposed signs are to be located, was an extremely flat curve, that is, it was not a sharp curve, and did not present a safety hazard. He also opined that the proposed locations of the signs did not present any traffic safety issue with regard to the "portal effect" as described by Mr. Comitta, with the exception of the proposed sign located on Property B (which is not the subject of this appeal) because it was so close to where the Turnpike runs under the Second Street Pike Bridge. Additionally, Mr. Caruolo noted that the proposed signs do not present any safety hazard because they are to be located over 600 feet from the bridges and overpasses and at least 70 feet from the edge of the Turnpike. The Board chose to rely on the expert testimony of Mr. Caruolo in reaching its decision, rather than the testimony of Baker's witness, Mr. Comitta. In so doing, it did not commit error, but merely assessed credibility. Having determined that Baker did not meet his burden to prove that the removal of the total prohibition on off-premises signs would be a detriment to the public's health, safety, morals, or general welfare, the Board acted correctly in striking the provision that established the *de jure* exclusion providing for such a total prohibition.

Accordingly, the order of the trial court is affirmed.

### ORDER

**NOW,** July 16, 2003, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is hereby affirmed.

 

The application for remand is dismissed as moot.