SOCIETY CREATED TO REDUCE UR-
BAN BLIGHT (SCRUB), Mary Caw-
ley Tracy, Friends of Logan Square,
Center City Residents Association
(CCRA), Friends of FDR Park, Dun-
can Civic Association, Councilman
David Cohen, Christopher Jurek, Jean
Gavin and Phil Straus, Appellants

v.

ZONING BOARD OF ADJUSTMENT,
City of Philadelphia and Preston
Ship & Rail, Inc.

Society Created to Reduce Urban Blight
(SCRUB), Mary Cawley Tracy,
Friends of Logan Square, Center City
Residents Association (CCRA),
Friends of FDR Park, Duncan Civic
Association, Councilman David Co-
hen, Christopher Jurek, Jean Gavin
and Phil Straus

v.

Zoning Board of Adjustment, City of
Philadelphia and Preston Ship & Rail,
Inc., Appeal of Preston Ship & Rail,
Inc.

Commonwealth Court of Pennsylvania.

Argued June 7, 2006.

Decided Sept. 27, 2006.

Samuel C. Stretton, West Chester, for appellant.

Cheryl L. Gaston, Philadelphia, for appellee, City of Philadelphia. John Mattioni, Philadelphia, for appellee, Preston Ship & Rail, Inc.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, and SMITH–RIBNER, Judge, and FRIEDMAN, Judge, and LEADBETTER, Judge, and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge McGINLEY.

The Society Created to Reduce Urban Blight (SCRUB), et. al appeals from an order of the Court of Common Pleas of Philadelphia County (common pleas court) that affirmed the decision of the Philadelphia Zoning Board of Adjustment's (Board) grant of a variance to Preston Ship & Rail, Inc. (Preston) in order to erect five outdoor wrap around advertising signs (outdoor advertising signs) on a vacant building. Preston cross-appeals and contends that Section 1460(10) of the Philadelphia Zoning Code (Code) is unconstitutional. Additionally, Preston seeks to quash SCRUB's appeal to this Court and asserts that SCRUB lacks standing.

On July 23, 2003, Preston sought a registration permit from the Department of

Licenses and Inspections (L & I) in order to erect five outdoor advertising signs on the grain building located on the property. Application For Use Registration Permit, July 23, 2003, at 1; Reproduced Record (R.R.) at A–289. On September 11, 2003, L & I issued a notice of refusal of permit and concluded that the outdoor advertising signs would violate numerous provisions of Section 14–1604 of the Code. Specifically, L & I specified the following violations: 1) that the outdoor advertising signs would be located within 500 feet of each other; 2) that only two outdoor advertising signs are permitted on any one lot with no more than one sign support structure; 3) that the outdoor advertising signs would total approximately 38,000 square feet; and 4) that the erection of each new outdoor advertising sign would require the removal of a previous sign.

On October 7, 2003, Preston appealed the refusal to the Board and alleged:

> Preston . . . is the owner of the property located at 2600 Rear Penrose Ferry Road, Philadelphia, PA otherwise known as "Pier 3 at Girard Point" ("Property"). Applicant [Preston] proposes to use a building located on the Property which was formerly used as a grain elevator and tower ("Building") for the erection of outdoor advertising signs on the face of each side of the Building.
>
> In order to accomplish this goal, Applicant [Preston] requests several variances from the requirements of the City of Philadelphia Zoning Code ("Zoning Code") for the erection of outdoor advertising signs. The Property is situate in a Least Restricted Industrial Zoning District. This zoning district permits outdoor advertising signs. However, Applicant [Preston] must obtain several variances from the provisions of the Zoning Code so as to avoid the unnecessary hardship presented in this case. In addition, the Zoning Code contains an unconstitutional Outdoor Advertising and Non–Accessory Advertising prerequisite for obtaining a permit for such use from which Applicant [Preston] also seeks relief. Applicant will demonstrate that the Property has several unique features and characteristics which justify the relief it seeks from the Zoning Code's requirements for outdoor advertising signs. . . .
>
> The overall Property consists of a dilapidated pier . . . which is landlocked. Access to the Property is limited to an easement over an adjacent property. The Pier has collapsed in at least two major areas and was allowed to fall into disrepair by the former owner. The primary remaining structure on the Property is a grain elevator and tower, which is a massive reinforced concrete structure with no present or reasonably foreseeable use, is an eyesore, and for which the cost of demolition would be prohibitively expensive. . . .
>
> The severe deterioration of the Pier with the old unusable structures on the Property, the nature of the surrounding area . . . represent conditions which are unique to this Property and are such to justify the requested relief whether the variances are classified as use or dimensional variances or both.

Application Of Preston Ship & Rail, Inc., October 7, 2003, at 1–2; R.R. at A–391–92. After a hearing, the Board granted Preston's request for a use variance and the common pleas court affirmed.[1] SCRUB

---

1. On January 21, 2005, Preston filed a motion to quash the appeal before the common pleas court and submitted a similar argument. On April 5, 2005, the common pleas court denied the motion to quash and affirmed the decision of the Board.

appealed and Preston cross-appealed.[2]

## I. Motion To Quash SCRUB's Appeal

■ Initially, Preston requests this Court to quash SCRUB's appeal based on lack of standing because none of the individuals are "aggrieved persons" as defined under Section 17.1 of the Home Rule Act, 53 P.S. § 13131.1.[3] Preston acknowledges that Section 14–1806 of the Code does grant standing to "taxpayers" such as members of SCRUB. *See Society Created to Reduce Urban Blight (SCRUB) v. Zoning Board of Adjustment of the City of Philadelphia (Procacci)*, 729 A.2d 117 (Pa. Cmwlth.1999).[4] However, Preston asserts that under the newly enacted provisions of Act 193 SCRUB no longer has standing because it is not an "aggrieved person."

SCRUB counters that: 1) Preston conceded standing to SCRUB and other individuals at the Board's hearing; 2) Preston waived the standing issue because it did not appeal from the Board's decision regarding the standing issue; and 3) SCRUB has standing pursuant to Section 14–1806(1) of the Code which controlled the issue of standing before the Board and in the appeals to the common pleas court and this Court.

Section 14–1806(1) of the Code had provided that "[a]ny person or persons jointly or severally aggrieved by any decision of the Board *or any taxpayer* ... may present to a Court of record a petition, duly verified, setting forth that such decision is illegal in whole or in part, specifying the ground for that illegality." (emphasis added).

Section 17.1 to the Home Rule Act, 53 P.S. § 13131.1, now provides:

### Specific Powers

In addition to any aggrieved person, the governing body vested with legislative powers under any charter adopted pursuant to this act shall have standing to appeal any decision of a zoning hearing board or other board or commission created to regulate development within the city. *As used in this section, the term "aggrieved persons" does not include taxpayers of the city that are not detrimentally harmed by the decision of the zoning hearing board or other board or commission created to regulate development.* (emphasis added).

■ Initially, this Court notes that "[a] cause of action arises under Pennsylvania law when one can first maintain an action to a successful conclusion." *Konidaris v. Portnoff Law Associates, Ltd.*, 884 A.2d 348, 354 (Pa.Cmwlth.2005), *citing In re Schorr*, 299 B.R. 97 (Bankr.W.D.Pa.2003).

In *Ieropoli v. AC&S Corporation*, 577 Pa. 138, 842 A.2d 919 (2004)[5], our Pennsyl-

---

2. By order dated November 1, 2005, this Court consolidated the appeals.

3. Section 17.1 of the Home Rule Charter Act was added by the Act of November 30, 2004, P.L. 1523, No. 193.

4. This Court notes that pursuant to the Pennsylvania Municipalities Planning Code (MPC), Act of June 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11202 standing to challenge a variance was limited to a person affected by the variance application. In this situation an "aggrieved person" is usually a property owner who resided within the vicinity of the requested variance. However, the MPC does not apply to Philadelphia.

5. The facts in *Ieropoli* as recounted by this Court in *Konidaris* are:

The case involved a statute which limited asbestos-related liabilities of corporations that arose out of mergers or consolidations. The statute expressly applied to pending lawsuits. A machinist with a pending asbestos suit challenged the constitutionality of the statute, which had the effect of shielding one of the defendants from liability. On appeal from the trial court's dismissal of the defendant, the Supreme Court

vania Supreme Court addressed the issue whether subsequent legislation that extinguished a party's cause of action was unconstitutional:

> [W]e begin with the meaning of the phrase 'cause of action'. As we have stated in other cases, the phrase does not have a single definition, and means different things depending on context.... In this case, 'cause of action' relates to remedy. It is the vehicle by which a person secures redress from another person for the consequences of an event that is a legal injury.... Moreover, as we have seen, a cause of action that has accrued takes on an even greater meaning. It is a vested right, which under Article 1, Section 11 [6], may not be eliminated by subsequent legislation....
> In light of these principles, the violation of Article 1, Section 11 that the Statute's application occasions in this case is clear. Before the Statute's enactment, each cause of action that Appellants brought against Crow Cork was a remedy-it was the vehicle by which Appellants lawfully pursued redress, in the form of damages, from Crown Cork for an alleged legal injury. But under the Statute, Appellants cannot obligate Crown Cork to pay them damages on those causes of action. In this way, each cause of action has been stripped of its remedial significance, as it can no longer function as a means by which Appellants may secure redress from Crown Cork. *As a remedy, each cause of action has been, in essence, extinguished. Under Article 1, Section 11, however, a statute may not extinguish a cause of action that has accrued.* Therefore, as Appellants' causes of action accrued before the Statute was enacted, we hold that the Statute's application to Appellants' cause of action is unconstitutional under Article 1, Section 11. (emphasis added)

*Ieropoli*, 577 Pa. at 155–56, 842 A.2d at 929–30.

Here, this Court believes that the rationale enunciated by our Supreme Court in *Ieropoli* controls the present controversy.

Article 5, Section 9 of the Pennsylvania Constitution provides:

> There shall be a right of appeal in all cases to a court of record from a court not of record; *there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court,* the selection of such court to be as provided by law; and there shall be such other rights as may be provided by law. (emphasis added).

In the present controversy, the following chronological dates are critical: 1) on **July 23, 2003,** Preston applied for a registration permit before the L & I; 2) on **September 11, 2003,** L & I denied Preston's request for a registration permit; 3) on **October 7, 2003,** Preston timely appealed the denial to the Board and hearings were held on November 12, 2003, and March 10, 2004, at which time SCRUB became a party; 4) on **June 7, 2004,** the Board granted a five-year temporary use certificate for the five outdoor advertising signs; 5) on **June 25,**

---

reversed. It held that under the Remedies Clause, a cause of action that has accrued is a vested right which may not be eliminated by subsequent legislation.
*Konidaris*, 884 A.2d at 353.

**6.** Article 1, Section 11 of the Pennsylvania Constitution provides:

All courts shall be open; and every man for an injury done in his land, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

2004, SCRUB timely appealed to the common pleas court; 6) on **November 30, 2004,** the amendment to Section 17.1 of the Home Rule Act, 53 P.S. § 13131.1, took effect; 7) on **September 26, 2005,** the common pleas court affirmed the Board; and 8) on **October 6, 2005,** SCRUB appealed to this Court.

Like in *Ieropoli,* to allow the retroactive application of the amendment to Section 17.1 of the Home Rule Charter, 53 P.S. § 13131.1 would deprive SCRUB of its initial right of appeal from an adverse decision of the Board to the common pleas court and ultimately to this Court. This would clearly violate Article 5, Section 9 of the Pennsylvania Constitution.[7] As our Pennsylvania Supreme Court noted in *Ieropoli:*

> Quoting from the *Lewis [v. Pennsylvania R. Co.,* 220 Pa. 317, 69 A. 821, 823 (1908) ] case, we stated:
>
>> 'There is a vested right in an accrued cause of action.... *A law can be repealed by the law giver; but the rights which have been acquired under it, while it was in force, do not thereby cease. It would be an absolute injustice to abolish with the law all the effects it had produced.* This is a principle of general jurisprudence; but a right to be within its protection must be a vested right.' (emphasis added).

*Ieropoli,* 577 Pa. at 152, 842 A.2d at 927. Pursuant to our Supreme Court's rationale enunciated in *Ieropoli* and *Lewis,* this Court must deny Preston's motion.

## II. SCRUB'S Appeal

At hearings held on November 12, 2003, and March 10, 2004, the following witnesses testified on behalf of Preston: Dan Perkowski (Perkowski), vice-president and director of marine projects; Robert Thomas (Thomas), an engineer; Vincent M. Carita (Carita), a civil engineer; and Kevin O'Connor (O'Connor), a traffic engineer.

Perkowski testified that Preston and its sister company, Carbon Services, Inc. (Carbon), were in the marine and recycling business. Notes of Testimony, November 12, 2003, (N.T. 11/12/03) at 14; R.R. at A–36. Perkowski continued that the pier was in severe disrepair, that Preston repaired a portion of the Pier, and that Preston now utilized about 180 feet of the 800 foot Pier. N.T. 11/12/03 at 33–36; R.R. at A–55–58. Preston desired to rehabilitate the entire pier to make it a viable bulk marine terminal. According to Perkowski, the money generated from the outdoor advertising was to be used to complete the repairs to the Pier and build a recycling center that would handle 100 tons of recycling material per day. N.T. 11/12/03 at 20–21; R.R. at A–42–43.

In addition to Perkowski's testimony, Michael Mattioni (Mattioni), attorney for Preston, recounted to the Board that the grain elevator building served no viable purpose:

> Bob [Thomas, an engineer for Preston] came out ... [and][h]e couldn't find any use for the building.... Part of this is because the building is unique. It's a hollow building. As a grain elevator, it's a vertically hollow building, so you cannot use it for storage, you cannot use it for offices, you can't use it for apartments....

> In addition to this the building can't be used as a grain elevator. First of all, no grain comes through the port of Phila-

---

**7.** Again, this Court must reiterate that we are not declaring Act 193 unconstitutional but only "that the Statute as applied in this case is unconstitutional under" Article 5, Section 9 of the Pennsylvania Constitution. *See Ieropoli,* 577 Pa. at 159, 842 A.2d at 932.

delphia anymore. On top of that, it's in a dilapidated condition. . . .

N.T. 11/12/03 at 7–7; R.R. at A–29–30.

Thomas opined that the only viable use of the Property was for outdoor advertising. N.T. 11/12/03 at 65; R.R. at A–87.

Carita testified it would cost 15 million dollars to rehabilitate the Pier. N.T. 11/12/03 at 70; R.R. at A–92. Although Carita never performed a structural analysis of the grain elevator building, he believed that the building would be able to bear the weight of the proposed outdoor advertising signs. N.T. at 75–76; R.R. at A–97–98.

O'Connor testified that the outdoor advertising signs would not pose a safety threat to motorists. N.T. 11/12/03 at 78; R.R. at A–100. Specifically, O'Connor stated that the grain elevator building was located on a remote area on the Property and the outdoor advertising signs would be 1600 feet from Penrose Avenue and the Platt Bridge and a quarter of a mile from I–95. N.T. 11/12/03 at 80; R.R. at A–102. O'Connor also testified that the outdoor advertising signs would have to be larger in order for motorist to observe them from those distances. N.T. 11/12/03 at 80; R.R. at A–102.

The following members of SCRUB testified: Gary Smith (Smith), an architect and urban planner; William Faust (Faust), member of the Center City Residents Association (CCRA); Jean Gavin (Gavin), member of the Fox Chase Home Owners Association; John Kline (Kline), vice-president of Duncan Civic Association; Mary Tracy (Tracy), executive director of SCRUB; and Councilperson David Cohen (Cohen) for City Council.

Smith testified that the Property was within the least restrictive industrial district and that "[v]irtually any industrial use, including egregious uses, those that none of us will want next door to us are allowed as of right over the counter in this site. . . ." Notes of Testimony, March 10, 2004, (N.T. 3/10/04) at 15 and 17; R.R. at A–123 and A–125. Smith continued that the Property was already productive and that "the concrete pipe and recycling for a reef process is currently the activity on the site." N.T. 3/10/04 at 17; R.R. at A–125.

Faust testified that CCRA opposed the outdoor advertising signs because "the size of the proposed wall wraps will be immense" and "[i]t would dominate views for miles . . . [f]or that very reason alone, the proposed uses are thus wholly incompatible with the direction that the City itself wants the Delaware River front to go." N.T. 3/10/04 at 90–91; R.R. at A–198–99.

Gavin testified that the proposed outdoor advertising signs "will be a real eyesore coming from the airport." N.T. 3/10/04 at 98; R.R. at A–206.

Tracy testified that "we have many buildings in the City of Philadelphia that are in need of repair, and to use the wallwraps as a vehicle for financing their reparation . . . sets a very dangerous precedent and it violates the code. . . ." N.T. 3/10/04 at 103–04; R.R. at A–211–2.

Lastly, Councilperson Cohen testified that City Council was concerned about the aesthetics of the City and the effect that existing signs were a problem. N.T. 3/10/04 at 132–34; R.R. at A–240–43.

The Board made the following pertinent finding of fact and conclusions of law:

26. A majority of the Zoning Board of Adjustment voted to grant the request for a use variance. On June 7, 2004, the Zoning Board of Adjustment issued a Notice of Decision granting a five (5) year temporary use certificate with the following provisos: must meet Fire Code as per proviso in letter from Mattioni Law Firm dated 5/18/04; all gross

receipts from out-door advertising Preston Ship and Rail, Inc., to be used solely to pay for improvement to pier; erection of a fifth sign on top of building at owner's expense to welcome visitors to Philadelphia. (Notice of Decision, Calendar No. 03–1424).

### CONCLUSIONS OF LAW

2. The Zoning Board of Adjustment shall consider a request for a variance pursuant to § 14–802 of the Zoning Code.

. . . .

4. The Applicant [Preston] has met its burden of proof that an unnecessary hardship will result if the variance is not granted. The Applicant [Preston] has shown that the enforcement of the applicable zoning requirements would present a unique hardship to the subject property.

5. Applicant [Preston] has met its burden to demonstrate that the signs are not contrary to the public interest. The Zoning Board heard testimony that the signs are located in a remote least restricted commercial area; that there are no other viable uses for the property other than uses proposed by the owner; that the monies generated by the revenue from the billboards will be used to repair the pier; that the project underway to repair the pier will eventually generate new jobs in Philadelphia.

6. The proposed use meets the applicable requirements for granting a variance, and therefore, the Zoning Board of Adjustment grants the Applicant's [Preston's] request for a use variance, with provisos.

The Decision of the Board, June 7, 2004, Finding of Fact (F.F.) No. 26 and Conclusions of Law (C.L.) Nos. 2 and 4–6 at 8–9; R.R. at A–285–86.

On appeal, the common pleas court heard legal argument from the parties and affirmed:

> There was substantial evidence presented to the Board that there were no viable uses for the property other than the uses proposed by the applicant [Preston]. The monies generated by revenue from the billboards would be used to repair the pier which will create new jobs in the City of Philadelphia. The Board concluded that the applicant [Preston] met its burden of proof that the signs are not contrary to the public interest. . . .
>
> The Board's findings and conclusions of law were based upon substantial evidence that an unnecessary hardship would result if the variance was not granted. In addition, the evidence at the hearings established that the Board's grant of a variance would not be contrary to public interest. (citation omitted).

Opinion of the Common Pleas Court, September 26, 2005, at 4.

■ On appeal[8], SCRUB contends that the Board abused its discretion when it granted the variances because there was a lack of substantial evidence to support a claim of hardship and that the signs were not contrary to public interest.

■ In *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983), our Pennsylvania

---

8. This Court's review, where as here, the common pleas court did not take additional testimony is limited to determining whether the Board committed an error of law or an abuse of discretion. *Gall v. Zoning Hearing Board of Upper Milford Township*, 723 A.2d 758 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 559 Pa. 682, 739 A.2d 545 (1999).

Supreme Court enunciated the criteria necessary to establish a variance:

> The standards governing the grant of a variance are equally well settled. The reasons for granting a variance must be substantial, serious and compelling.... The party seeking a variance bears the burden of proving that *(1) unnecessary hardship will result if the variance is denied,* and (2) *the proposed use will not be contrary to the public interest* .... The hardship must be shown to be unique or peculiar to the property as distinguished from a hardship arising from the impact of zoning regulations on the entire district.... *Moreover, mere evidence that the zoned use is less financially rewarding than the proposed use is insufficient to justify a variance* .... In evaluating hardship the use of adjacent and surrounding land is unquestionably relevant....
>
> ....
>
> ... It is the function of the zoning board to determine whether the evidence satisfies that test and the courts will not disturb that determination unless it is not supported by substantial evidence, i.e., such evidence as a reasonable mind might accept as adequate to support a conclusion. (citations omitted and emphasis added).

*Id.* at 555–57, 559, 462 A.2d at 640–42.

### A. Hardship

■ In the present controversy, Perkowski testified that the Property was currently being used to load concrete pipe onto barges. N.T. 11/12/03 at 19; R.R. at A–41. Perkowski stated that Preston was waiting approval from the Department of Environmental Protection so that it could begin a tire recycling business. N.T. 11/12/03 at 19; R.R. at A–41. Perkowski stated that Preston intended to recycle more than 100 tons of tires each day.

N.T. 11/12/03 at 30; R.R. at A–52. Also, the tires would be used to build marine reefs in the ocean. N.T. 11/12/03 at 27; R.R. at A–49. Critically, the undisputed evidence established that the revenues generated by the outdoor advertising signs were to be used exclusively to rehabilitate the Pier. Here, Preston failed to establish an unnecessary hardship in the present matter and the Board's finding to the contrary was error. "Typically, the loss of rental income from disallowed outdoor advertising signs is not an unnecessary hardship." *Society Created To Reduce Urban Blight (SCRUB) v. Zoning Board of Adjustment,* 831 A.2d 1255, 1262 (Pa.Cmwlth. 2003).

### B. The Public Interest

■ SCRUB next contends that the proposed outdoor advertising signs failed to satisfy the public interest criteria.

Section 14–1604 (Outdoor advertising and non-accessory advertising controls) of the Code provides:

(1) Legislative Findings. The Council finds that:

(a) Existing zoning controls have done little to prevent the City-wide proliferation of commercial outdoor advertising signs.

(b) The excessive number of commercial outdoor advertising signs contribute to visual clutter and detract from the aesthetic beauty of the City of Philadelphia.

....

(f) The proliferation of commercial outdoor advertising signs contribute to the appearance of deterioration of commercial and industrial areas of the City and therefore negatively impact upon the economic viability of these areas.

(g) Said signs jeopardize public safety by distracting pedestrians and to a

greater extent passing motorists, since these signs by their nature are erected in areas intended to be seen by drivers of motor vehicles.

. . . .

(i) Regulation and removal of these signs will enhance the aesthetic beauty of the City of Philadelphia by promoting signs which are harmonious with the streetscape and by eliminating signs which dominate or obscure views of the City.

(j) Regulation and removal of these signs will protect public and private investment, promote economic development and commercial revitalization.

(k) There are few, if any, circumstances under which the prohibition of these signs will render property valueless, result in unnecessary hardship or otherwise meet the criteria for a variance stated in § 14–1802.

Also, Paula Brumbelow (Brumbelow), of the Planning Commission, testified that the proposed outdoor advertising signs violated various subsections of Section 14–1604 of the Code:

One, this application is not a minor departure from the requirements of the Zoning Code. We believe there are at least 26 different provisions of the Zoning Code . . . including, A, five support structures are proposed while only one support structure is permitted per lot; B, the proposed signs exceed the maximum allowable sign area of 1,500 square feet per sign support structure, a condition which is prohibited; C, this applica-

tion proposes more than two sign faces on any one lot, a condition that is prohibited; D, the proposed signs are all located within 500 feet of each other, a condition which is prohibited; E, all of the proposed signs extend more than 20 feet in height above their bottom edge, a condition which is prohibited; F, there is no provision for the removal of existing signs which encompass equal sign area, a condition which is prohibited. . . .

N.T. 3/10/04 at 154–55; R.R. at A–262–63.[9]

Again, there is a lack of substantial evidence of record to support the Board's conclusion and the common pleas court's affirmance that the five proposed outdoor advertising signs were not contrary to the public interest.

### III. Preston's Appeal

Preston contends that Section 14–1604(10) of the Code is unconstitutional because it is tantamount to exclusionary zoning that prevents Preston from using the Property for an otherwise expressly permitted non-accessory outdoor advertising use.

Section 14–1604(10) of the Code provides:

(a) *For each outdoor advertising and non-accessory sign erected in conformance with these provisions, an existing sign or signs encompassing equal or greater sign area shall be removed* (emphasis added);

(b) The application to erect an outdoor advertising or non-accessory sign must

---

**9.** Specifically, the following Sections of the Code are applicable: Section 14–1604(3) of the Code prohibits outdoor advertising and non-accessory signs "within five hundred feet of any other outdoor advertising sign"; Section 14–1604(7) of the Code provides that "[n]o more than two (2) sign faces or advertising messages shall be permitted on any one (1) lot; provided, that no more than one (1)

sign support structure shall be permitted on any lot"; Section 14–1604(5)(b) of the Code limits maximum sign area to 1,500 square feet for frontages along a street 60 feet wide or wider; and Section 14–1604(10) of the Code requires that an existing sign or signs of equal or greater sign area be removed for each outdoor advertising and non-accessory sign erected.

specify the size and location of the sign(s) to be removed. *Sufficient proof of the physical existence of the sign(s) to be removed shall be supplied to the Department of Licenses and Inspections.* Such proof may be in the form of permits and/or photographs of the existing sign(s) (emphasis add);

(c) *The application to erect an outdoor advertising or non-accessory sign must also be accompanied by a written authorization from the owner of the property where the sign(s) to be removed are located authorizing the applicant to remove said sign(s) and acknowledging that the right to maintain an outdoor advertising or non-accessory sign is being forfeited through the filing of the application and the issuance of the permit for the erection of the new sign* (emphasis added);

(d) *No permit for the erection of an outdoor advertising or non-accessory sign shall be issued prior to actual removal of the sign(s) required to be removed as provided in subsections 10(a), (b) and (c) above.* (emphasis added).

■ Initially, in *Baker v. Upper Southampton Township Zoning Hearing Board,* 830 A.2d 600, 604–06 (Pa.Cmwlth. 2003), this Court noted:

A zoning ordinance is presumptively constitutional.... *Before a reviewing tribunal may declare a zoning ordinance unconstitutional, the challenging party must clearly establish that the provisions of the ordinance are arbitrary and unreasonable* .... *A legislative enactment can be declared void only when it violates the fundamental law clearly, palpably, plainly and in such a manner as to leave no doubt or hesitation in the mind of the court* .... An ordinance will be found unreasonable and not substantially related to the police power purpose if it is shown to be unduly restrictive or exclusionary.... When reviewing an ordinance to determine its validity, courts must generally employ a "substantial due process inquiry, involving a balance of landowners' rights against the public interest sought to be protected by an exercise of the police power" .... (citations omitted and emphasis added).

*Id.* at 604–05.

### A. De Jure Exclusionary Challenge

■ "In a *de jure* challenge, the landowner alleges that the ordinance *totally* excludes a proposed use." *Polay v. Board of Supervisors of West Vincent Township,* 752 A.2d 434, 437 n. 7 (Pa. Cmwlth.), *appeal denied,* 568 Pa. 673, 795 A.2d 982 (2000). "[A] *de jure* exclusion exists where the *ordinance on its face* totally excludes a proposed use." *Baker,* 830 A.2d at 605.

When a challenger has satisfied its burden of proving that an ordinance is *de jure* exclusionary, the burden then shifts to the municipality to establish that the exclusion is for the public's health, safety, morals, and general welfare.... The constitutionality of a zoning ordinance that totally excludes a legitimate use must bear a *more* substantial relationship to a stated public purpose than a regulation that merely confines a use to a certain zoning district. (citations omitted and emphasis in original and added).

*Id.* at 606.

■ A review of the record establishes that Section 14–1604(10) of the Code is not *de jure* exclusionary. There was no dispute that there were thousands of outdoor advertising signs located throughout the City. Therefore, there was no *total* exclusion of outdoor advertising signs provided they complied with the sign ordinance. In addition, Preston was unable to introduce any evidence at the Board hearing that

Section 14–1604(10) of the Code precluded other sign providers from erecting outdoor advertising signs where appropriately zoned. Therefore, this Court must conclude that Section 14–1604(10) of the Code is not *de jure* exclusionary.

### B. De Facto Exclusionary Challenge

■ Preston asserts that the sign removal requirement under Section 14–1604(10) of the Code is *de facto* exclusionary because in order to comply with this section the owner must already have an existing sign on the property for removal in order to erect a new sign. Preston asserts that this "removal requirement discriminates against newcomers in a district which otherwise allows the use." *See* Brief of Appellee Preston Ship & Rail, Inc. at 59.

■ In a *"de facto* challenge ... the landowner alleges that the ordinance on its face permits the proposed use, but does so under such conditions that the use cannot in fact be accomplished." *Centre Lime and Stone Co., Inc. v. Spring Township Board of Supervisors,* 787 A.2d 1105, 1111 (Pa.Cmwlth.2001).

Essentially, Preston's argument is that it was precluded from removing an existing sign in order to erect a new sign only because Preston was not in the sign business. This is not a *"de facto* exclusionary argument." As established at the hearing, the Property was located in the least restricted industrial area (LR Industrial District) and outdoor advertising signs were a permitted use. Although Preston claims that it was prevented from complying with the sign removal requirement of Section 14–1604(10) of the Code, Preston ignores the undisputed fact that the five proposed outdoor advertising signs clearly violated numerous provisions of Section 14–1460 of the Code. Actually, the only evidence to support Preston's quest to erect the five proposed outdoor advertising signs was the generation of additional revenues for the rehabilitation of the Pier. Again, this Court must conclude that Preston failed to sustain its burden to prove that Section 14–1604(10) of the Code was *de facto* exclusionary.

Accordingly, this Court denies Preston's motion to quash SCRUB's appeal and reverses the common pleas court's denial of SCRUB's appeal. Also, this Court denies Preston's cross-appeal.

### ORDER

AND NOW, this 27th day of September, 2006, the motion to quash the appeal of the Society Created to Reduce Urban Blight (SCRUB), et al. filed by Preston Ship & Rail, Inc. in 2099 C.D.2005 is denied. The order of the court of common pleas court's denial of SCRUB's appeal is reversed and the cross-appeal filed by Preston Ship & Rail, Inc. at 2192 C.D.2005 is denied.

DISSENTING OPINION BY President Judge COLINS.

I respectfully dissent. I fear the majority has allowed the esthetic unpleasantness of billboard clutter to cloud its legal judgment. Section 17.1 of the law known as the First Class City Home Rule Act,[1] 53 P.S. § 13131.1 (Act 193), clearly states that city taxpayers that are not detrimentally harmed by a decision of the zoning hearing board are not aggrieved persons for purposes of appeal. The Pennsylvania Constitution does not guarantee continued standing once the General Assembly has

---

**1.** Act of April 21, 1949, P.L. 665, *as amended,* added by Section 2 of the Act of November 30, 2004, P.L. 1523.

spoken. Act 193 makes it clear that taxpayers who are not individually harmed by a zoning decision do not fall within the definition of aggrieved persons. I would grant Preston Ship & Rail's motion to quash as the taxpayers no longer have standing to appeal.

Judge LEADBETTER joins in this dissent.